IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JAMES ALLEN SPURLOCK,

    **Plaintiff,**

    v.                                          CASE NO. 20-3121-SAC

RICHARD ENGLISH, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, filed this civil rights complaint pursuant to 42 U.S.C. § 1983. Plaintiff is an inmate at the El Dorado Correctional Facility in El Dorado, Kansas ("EDCF"). The Court entered a Memorandum and Order (Doc. 6) ("M&O") directing the officials responsible for the operation of EDCF to prepare a *Martinez* Report. The *Martinez* Report has now been filed (Doc. 21). The Court entered an Order (Doc. 29) granting Plaintiff an opportunity to respond to the *Martinez* Report. This matter is before the Court on Plaintiff's response (Doc. 30) and for screening Plaintiff's Complaint. The Court's screening standards are set forth in detail in the Court's M&O.

**I. Nature of the Matter Before the Court**

Plaintiff alleges in his Complaint that Defendants failed to protect him in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff alleges that he was placed in Protective Custody ("PC") due to threats from gang members. Plaintiff was in PC at Lansing Correctional Facility and then at Hutchinson Correctional Facility.

Plaintiff was then placed in PC at EDCF. Plaintiff alleges that on June 25, 2019, the PC unit he was in at EDCF was discontinued and Plaintiff remained in the unit as a General Population ("GP") unit. Plaintiff alleges that Defendant Cline directed Defendant English to discontinue this

1

PC program at EDCF.  They no longer brought meals to the PC unit and Plaintiff was forced to attend the chow hall.  Plaintiff requested placement in PC and filed grievances and wrote to the Warden regarding his placement in GP.  When Plaintiff explained to Defendant English that he was in PC because he was afraid he would be attacked again and possibly killed, English told Plaintiff on several occasions to "man-up & deal with it."  Plaintiff was told that the main gang members had either been transferred or were in the hole and he did not need to worry for his safety.

Plaintiff alleges that on August 4, 2019, while in GP at EDCF, he was assaulted by two gang members in his cell, suffered substantial injuries and was transported to the hospital.  Plaintiff was approached by gang members and told he either needed to join their gang or "coverup/cut off" his swastika tattoo.  When Plaintiff refused to comply, he was beaten by the two gang members.  Plaintiff was directed by staff to write a report about the incident, which he did.  This information "got out" to the prison population and Plaintiff was labeled a snitch.  Plaintiff was in the infirmary for several days following the incident.  Plaintiff was then placed back in PC.

Plaintiff names Unit Team Richard English and Warden Sam Cline as defendants.  Plaintiff alleges an Eighth Amendment violation and seeks compensatory and punitive damages.

**II.  Discussion**

"Prison and jail officials, as well as municipal entities that employ them, cannot absolutely guarantee the safety of their prisoners.  Nonetheless, they have a constitutional duty to take reasonable steps to protect the prisoners' safety and bodily integrity."  *Wright v. Collison*, 651 F. App'x 745, 748 (10th Cir. 2016) (unpublished) (quoting *Cox v. Glanz*, 800 F.3d 1231, 1247–48 (10th Cir. 2015)).  "To establish a cognizable Eighth Amendment claim for failure to protect an inmate from harm by other inmates, the plaintiff must show that he [was] incarcerated under conditions posing a substantial risk of serious harm, the objective component, and that the prison

official was deliberately indifferent to his safety, the subjective component." *Id*. (citing *Smith v. Cummings*, 445 F.3d 1254, 1258 (10th Cir. 2006) (brackets and internal quotation marks omitted)).

The Court ordered a *Martinez* Report regarding Plaintiff's failure to protect claim. The *Martinez* report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims." *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987).

Plaintiff alleges that the PC unit he was in at EDCF was discontinued on June 25, 2019, and he was not offered continued protection nor asked to sign a PC waiver. Plaintiff claims that he was forced to stay in GP.

The *Martinez* Report provides that on May 16, 2019, Plaintiff elected to become part of an experimental housing unit called the "Managed Movement Unit" or "PC Lite" that was housed in E-1 Cell House at EDCF. (Doc. 21, at 9.) "This unit was an alternative housing unit for offenders who qualified for protective custody, but would be able to receive additional privileges similar to that of the general population offenders." *Id*. Plaintiff remained in E-1 Cell House from May 16, 2019 until June 25, 2019, when the unit was returned to a regular general population unit. *Id*. at 10. The *Martinez* Report provides that inmates "were given a choice to transfer to 'Protective Custody' status or to remain in general population" and Plaintiff "elected to remain in the general population and stay in 'E-1 Cell House.'" *Id*. The *Martinez* Report cites to Exhibits B, C, X, and AA, as support for this statement. The Report also states that Plaintiff "had multiple opportunities to be placed in 'Protective Custody' prior to the assault but did not make that request." *Id*. at 11 (citing Exhibits B, X, and Y).

Exhibit B to the Report is the Affidavit of Defendant UTM English. (Doc. 21–2.) UTM English attests that inmates in the E-1 Cell House were notified in writing that the Unit would return to general population status and every offender in the Unit would be allowed to choose to

3

return to PC or elect GP housing. *Id*. at 2. "Each offender was instructed to contact a Unit Team Manager if they wanted to be put in Protective Custody." *Id*. UTM English then declares that he does not recall Plaintiff "requesting to return to the designated Protective Custody Unit or recall him expressing concern or fear for his safety." *Id*.

Exhibit C is the Affidavit of Classification Administrator Maria Bos. (Doc. 21–3.) This affidavit likewise provides that inmates were given a choice when E-1 Cell House was returned to general population and that Plaintiff "elected to remain in the general population and stay in E-1 Cell House." *Id*. at 6.

Exhibit X includes grievances and responses to grievances that were filed after Plaintiff was assaulted. *See* Doc. 21–24. The responses suggest that Plaintiff could have contacted staff prior to E-1 returning to GP, but that "there is no documentation stating that you attempted to do so." *Id*. at 7. It further provides that "[i]n the future I would suggest that if you are in fear of your safety that you need to tell a staff member immediately so the proper action can be taken." *Id*. Exhibit AA appears to show that Plaintiff was moved to PC on August 4, 2019, after he was assaulted. Exhibit Y is the response disapproving Plaintiff's injury claim which states again that Plaintiff was given an option and chose to rejoin the GP instead of PC. (Doc. 21–25, at 2.)

Plaintiff disputes the allegations in the *Martinez* Report. Plaintiff attaches to his Complaint grievances he filed on July 9 and 19, 2019, stating that he needs PC and does not feel comfortable in GP. (Doc. 1–1, at 3, 5, 18.) Plaintiff was not placed back into PC until after he was attacked on August 4, 2019. (Doc. 1–1, at 20.) The *Martinez* Report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (10th Cir. 1983)). Despite the allegations in the

Report contending that Plaintiff did not elect to remain in PC, Plaintiff has presented sufficient conflicting evidence. Therefore, Plaintiff's Complaint survives screening and the Court will order Defendants to answer or otherwise respond to the Complaint.

**IT IS THEREFORE ORDERED THAT** Defendants shall have until **October 29, 2021**, in which to file an answer or otherwise respond to Plaintiff's Complaint.

**IT IS SO ORDERED**.

**Dated September 30, 2021, in Topeka, Kansas.**

<u>s/ Sam A. Crow</u>
**Sam A. Crow**
**U.S. Senior District Judge**