UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JAMES ALLEN SPURLOCK,

    Plaintiff,

v.

                                Case No. 5:20-cv-03121-JWB

RICHARD ENGLISH and SAM CLINE,

    Defendants.

## PRETRIAL ORDER

On October 24, 2022, U.S. Magistrate Judge Kenneth G. Gale conducted a pretrial conference in this case by phone. Plaintiff James Allen Spurlock appeared through counsel Larry Michel. Defendants Sam Cline and Richard English appeared through counsel Whitney L. Casement and Katherine Simpson.

This pretrial order supersedes all pleadings and controls the subsequent course of this case. It will not be modified except by consent of the parties and the Court's approval, or by order of the Court to prevent manifest injustice. Fed. R. Civ. P. 16(d) & (e); D. Kan. Rule 16.2(b).

1. **PRELIMINARY MATTERS.**

    a. **Subject-Matter Jurisdiction.** Subject-matter jurisdiction is invoked under 28 U.S.C. § 1331 and is not disputed.

    b. **Personal Jurisdiction.** The Court's personal jurisdiction over the parties is not disputed.

    **c.**    **Venue.**  Venue in this court is not disputed.

    **d.**    **Governing Law.**  Subject to the Court's determination of the law that applies to the case, the parties believe and agree that the substantive issues in this case are governed by the following law:

Plaintiff alleges Defendants violated his right to be free of cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution.

Defendants assert the following defenses:

    i.    Qualified immunity

    ii.    Lack of personal participation/involvement

    iii.    Any damages or injuries sustained by Plaintiff were the result of one or more intervening and superseding causes and Plaintiff has no right to recovery from Defendants.

**2.**    **STIPULATIONS.**

    **a.**    The following facts are stipulated:

        **i.**    James Spurlock #114673 is an offender in the custody of the Kansas Department of Corrections ("KDOC").  He has been in the custody of the KDOC since October 25, 2016.

        **ii.**    Defendant Sam Cline ("Warden Cline") was the Warden of El Dorado Correctional Facility ("EDCF") from October of 2018 until his retirement in February 2020.

        **iii.**    Defendant Richard English was employed at EDCF and served as the Unit Team Manager for E Cellhouse when Spurlock resided there in 2019.  He retired from KDOC in August 2021.

        **iv.**    Spurlock was transferred from Hutchinson Correctional Facility ("HCF") to EDCF on April 3, 2019.

 **v.** Spurlock received a disciplinary report on May 5, 2019, and was moved to segregation at EDCF.

 **vi.** After his disciplinary time expired, on May 12, 2019, Spurlock requested protective custody.

 **vii.** On May 16, 2019, Spurlock was released from segregation and was placed in the "Managed Movement Unit" ("MMU") in E-1 cellhouse.

 **viii.** MMU was different from administrative segregation in several ways including that offenders living in MMU could have contact with other offenders in the MMU, MMU offenders did not have to be restrained and escorted to other areas of the prison, and MMU offenders were allowed dayroom time and yard time with other offenders in the unit. Offenders in the MMU had their meals brought to the unit and were required to retrieve their meals off a cart and take them back to their assigned cell to eat.

 **ix.** Offenders residing in administrative segregation at EDCF must be restrained and escorted to other areas of the prison, cannot have contact with other inmates, get one hour of yard time wherein they are alone in a 12 foot by 12 foot fenced in area, and do not get dayroom time.

 **x.** Offenders residing in general population can have contact with other general population inmates not residing in the same unit, get dayroom time, get yard time, eat their meals in the chow hall, and do not have to be restrained or escorted to other areas of the prison.

 **xi.** On June 25, 2019, the MMU was disbanded.

 **xii.** On August 4, 2019, Spurlock was battered in his cell by two offenders. He was subsequently transferred to the hospital for a CT scan which came back negative.

 **xiii.** Upon return to EDCF, Spurlock was placed in segregation in A cellhouse on August 7, 2019.

 **b.** The parties have stipulated to the admissibility of the following exhibits for purposes of summary judgment and trial:

 **i.** All exhibits filed with the Martinez Report (Doc. 21);

 **ii.** KDOC DEF000001 – 001133.

**3.     FACTUAL CONTENTIONS.**

    **a.     Plaintiff's Factual Contentions.**

At all times relevant hereto, Spurlock has been in the custody of the Kansas Department of Corrections ("KDOC"). Defendant Sam Cline ("Cline") was the Warden of El Dorado Correctional Facility ("EDCF") from October of 2018 until his retirement in February 2020. Defendant Richard English ("English") was employed at EDCF and served as the Unit Team Manager for E Cellhouse when Spurlock resided there in 2019. He retired from KDOC in August 2021. On or about April 3, 2019, Spurlock was transferred from Hutchinson Correctional Facility ("HCF") to EDCF. At HCF, Spurlock had been in administrative segregation/protective custody due to threats by the Aryan Brotherhood ("AB") at HCF and Lansing Correctional Facility ("LCF"). The threats arose from a swastika tattoo on Spurlock's arm that the AB demanded he remove or that he become a member of their gang. When he arrived at EDCF, however, Spurlock was placed in general population. He was attacked and battered by two members of the AB, at which time he requested and received protective custody. Subsequently, Defendant English asked Spurlock why he was in protective custody and Spurlock related his past history with the AB and the fact that he was labeled a snitch as a result of the attack shortly after being transferred to EDCF. Nevertheless, on or about June 25, 2019, Spurlock was removed from protective custody and placed in general population.

Following his transfer to general population, Spurlock submitted Form 9's (internal requests or grievances) to Defendant English on July 9, 2019, and Defendant Cline on July 19, 2019 requesting protective custody. Spurlock's requests were either declined or not acted on and he remained in general population. Shortly thereafter, on or about August 4, 2019, Spurlock was again attacked and beaten inside of his cell by two members of the AB, resulting in bodily injury.

Spurlock asserts that Cline and English acted with deliberate indifference to his safety, knowing he was at risk of physical harm, and took no action to protect him, resulting in a physical assault and bodily injury. Spurlock filed an administrative claim for his damages, but the claim was denied. Spurlock then filed the current action pro se and current counsel was subsequently appointed by the Court.

b.  **Defendants' Factual Contentions.**

i.  Spurlock was placed in general population when he was transferred from HCF to EDCF on April 3, 2019.

ii.  The Managed Movement Unit ("MMU") was not a protective custody unit. Rather, the inmates residing in the MMU were classified as general population offenders.

iii.  English did not have authority to make custody classification decisions.

iv.  Spurlock served time in disciplinary segregation in September and October 2018, after which he expressed fear for his personal safety from unnamed inmates in general population. He was then moved to segregation until November 1, 2018, after the Segregation Review Board recommended returning him to general population because he refused to provide substantial reasons to remain in segregation under protective custody status.

v.  Spurlock received another disciplinary report and spent time in segregation starting on November 11, 2018.

vi.  After he completed his disciplinary time, he remained in segregation on "Other Security Risk Status" for fear of others.

vii.  On April 3, 2019, Spurlock was transferred to EDCF and placed in general population.

viii.  On May 5, 2019, Spurlock received another disciplinary report for which he was sent to disciplinary segregation.

ix.  On May 12, 2019, he refused to leave segregation once done serving his disciplinary time and requested protected custody status. He claimed that others in the housing unit were trying to harm him because he had a swastika tattoo but was not a member of the Aryan Brotherhood.

x.  Spurlock was considered general population custody status when he was moved to the MMU on May 12, 2019. He did not express concern for his safety after he was moved to MMU in E-1 cellhouse.

xi.  MMU was an experimental housing unit at EDCF in which inmates who expressed concerns for their safety were housed when they, for

5

|      |                                                                                                                                                                                                                                                                                       |
|------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|      | one reason or another, did not meet the qualifications for protected custody status. |
| xii. | Approximately two weeks before the MMU was disbanded, all inmates in the unit were notified that the unit would be disbanded and that they had until June 25, 2019, to decide whether they wanted to go to administrative segregation under protective custody status or general population. |
| xiii. | Spurlock told his mental health provider and his girlfriend that he had notice that the MMU was closing and that he was given a choice of whether to choose protective custody or general population. |
| xiv. | Spurlock did not request protective custody and voluntarily chose to go to general population when the MMU was disbanded. |
| xv. | Spurlock did not request protective custody after the MMU was disbanded on June 25, 2019, and before he was battered by two offenders on August 4, 2019. |
| xvi. | Neither English nor Cline received a form 9 from Spurlock from June 25, 2019, to August 4, 2019 wherein he requested protective custody. |
| xvii. | KDOC has no record of a form 9 or other writing from Spurlock from June 25, 2019, to August 4, 2019 wherein he requested protective custody. |
| xviii. | It was English's practice to respond to all form 9 requests from inmates. |
| xix. | Warden Cline delegated the duty of reviewing grievances and form 9 requests directed to his attention to a Deputy Warden. |
| xx. | The inmates who battered Spurlock on August 4, 2019, were not inmates which Spurlock named as potential dangers to him when he previously requested protective custody in May 2019. |
| xxi. | Neither Warden Cline nor English knew about any threat to Spurlock's safety prior to the August 4, 2019 incident. |
| xxii. | There are no records of "Central Monitors" ever placed for Spurlock within the KDOC record keeping system. |

6

      **xxiii.** No medical provider or other expert provided any opinion that Spurlock suffered injury or other damages as a result of the August 4, 2019 incident.

      **xxiv.** Spurlock was not injured due to any action or omission by Defendants.

      **xxv.** Spurlock's treatment after the injury included a few weeks of pain medication. Spurlock did not pay for any of his medical bills after the August 4, 2019 incident.

      **xxvi.** Spurlock has a history of substance abuse disorder, mental illness, and receiving substance abuse and mental health services while in prison, prior to the August 4, 2019 incident.

**4.**    **LEGAL CLAIMS AND DEFENSES.**

   **a.**    **Plaintiff's Claims.**

Plaintiff asserts that he is entitled to recover upon the following theory:

      **i.** Plaintiff, an inmate in the custody of the Kansas Department of Corrections, asserts that he is entitled to recover under 42 U.S.C. § 1983 because Defendants acted with deliberate indifference in violation of his Eighth Amendment rights under the United States Constitution. Specifically, Defendants, while acting under color of State Law, were aware of a substantial risk of serious injury to Plaintiff from fellow inmates but nevertheless failed to take appropriate steps to protect him from a known danger. As a result, Plaintiff suffered physical and emotional injury after being assaulted by fellow inmates.

   **b.**    **Defendants' Defenses.**

Defendants assert the following defenses:

7

i. Qualified immunity – Plaintiff's claim for monetary compensation against Defendants in their individual capacities is barred by qualified immunity on the basis that Plaintiff cannot meet his burden of showing a clearly established violation of the Eighth Amendment. There is no clearly established case law wherein an inmate was placed in a managed movement unit, separate from general population inmates, but allowed to have contact with the other general population inmates in the unit. In addition, Plaintiff was given the opportunity to request protective custody before the managed movement unit was disbanded, but did not do so. In addition, he did not request protective custody after the managed movement unit was disbanded and before he was attacked by other inmates. Moreover, neither Defendant in this case knew about any threat to Plaintiff's safety before he was attacked.

ii. Lack of personal participation/involvement – Plaintiff's claim against Defendant Cline fails, because Cline did not know, nor did he have reason to know, about any threat to Plaintiff's personal safety. Defendant Cline delegated the duty to review form 9s and inmate grievances to a Deputy Warden. He was not involved in any way with any decision to place Plaintiff in the managed movement unit or general population. He also did not receive any form 9 or other

       request for protective custody from Plaintiff before the attack that occurred in August 2019.

       Plaintiff's claim against Defendant English fails, because English did not know, nor did he have reason to know, about any threat to Plaintiff's personal safety. In addition, his job duties did not include any authority to review requests for personal safety or make any decision on such a request. He also did not receive any form 9 or other request for protective custody from Plaintiff before the attack that occurred in August 2019.

  iii.    Any damages or injuries sustained by Plaintiff were the result of one or more intervening and superseding causes and Plaintiff has no right to recovery from Defendants. The assault of Plaintiff was unrelated to any alleged prior requests he made for protective custody related to feeling threatened by the Aryan Brotherhood. Rather, the assault occurred due to debt he owed to other inmates. Not only did he not request protective custody before the attack, he never named the individuals who attacked him as a threat, prior to the attack.

  iv.    Plaintiff has no compensatory damages.

## 5. DAMAGES AND NON-MONETARY RELIEF REQUESTED.

Plaintiff claims damages of $300,000 for compensatory and punitive damages, as well as attorney fees and costs.

9

**6.    AMENDMENTS TO PLEADINGS.**

None.

**7.    DISCOVERY.**

Under the scheduling order and any amendments, all discovery was to have been completed by September 30, 2022. Discovery is complete.

Unopposed discovery may continue after the deadline to complete discovery so long as it does not delay briefing or ruling on dispositive motions or other pretrial preparations. Although discovery may be conducted beyond the deadline to complete discovery if all parties agree to do so, under these circumstances the Court will not be available to resolve any disputes that arise during the course of such extended discovery.

**8.    MOTIONS.**

    **a.    Pending Motions.**

None pending.

    **b.    Additional Pretrial Motions.**

After the pretrial conference, the parties intend to file the following motions:

> Defendants intend to file a motion for summary judgment and various in limine motions.

The dispositive-motion deadline, as established in the scheduling order and any amendments, is **December 16, 2022**. The parties should follow the summary-judgment guidelines on the Court's website:

*http://ksd.uscourts.gov/wp-content/uploads/2015/10/Summary-Judgment-Guidelines.pdf*

Consistent with the scheduling order filed earlier in this case, the arguments and authorities section of briefs or memoranda must not exceed 30 pages, absent an order of the Court.

    **c.**    **Judge Broomes's Standing Order.**  Judge Broomes has entered a standing order regarding Page Limitations for Memoranda and Briefs.  The standing order can be found on the Court's Internet website at:

http://www.ksd.uscourts.gov/wp-content/uploads/2018/05/attachment-1.pdf

    **d.**    **Motions Regarding Expert Testimony.**  Not applicable, *i.e.*, the parties have stipulated that no expert testimony will be used in this case.

**9.**    **TRIAL.**

This case will be tried by jury.  Trial is expected to take approximately 5 days.  This case is set for trial beginning on **August 21, 2023, at 9:00 a.m.** in Topeka, Kansas.  The Court will attempt to decide any timely filed dispositive motions approximately 60 days before trial.  If no dispositive motions are timely filed, or if the case remains at issue after timely dispositive motions have been decided, then the trial judge may enter an order or convene another pretrial conference to set deadlines for filing final witness and exhibit disclosures, exchanging and marking trial exhibits, designating deposition testimony for presentation at trial, motions in limine, proposed instructions in jury trials, and proposed findings of fact and conclusions of law in bench trials.

**10.   ALTERNATIVE DISPUTE RESOLUTION (ADR).**

The status of settlement negotiations is as follows: the parties are currently trying to negotiate a settlement.  The parties currently believe the prospects for settlement of this case are fair, and they do not believe that further court-ordered ADR would be helpful.

The parties are reminded that, under D. Kan. Rule 40.3, they must immediately notify the Court if they reach an agreement that resolves the litigation as to any or all parties.  Jury costs may be assessed under this rule if the parties do not provide notice of settlement to the Court's jury coordinator at least one full business day before the scheduled trial date.

IT IS SO ORDERED.

Dated October 24, 2022, at Wichita, Kansas.

/s KENNETH G. GALE
Kenneth G. Gale
U.S. Magistrate Judge